### James F. Stepina v. The Conklin Lumber Company et al.

#### Gen. No. 13,203.

1. DAMAGES—*when not awarded upon affirmance of appeal taken for delay.* Damages will not be awarded upon the affirmance of a decree where the appeal has been taken for delay where so to do would impose an additional burden upon one primarily liable to pay the decree who has not appealed.

2. VARIANCE—*what not fatal, in mechanic's lien proceeding.* A fatal variance does not appear where the pleading charged an entire contract to furnish certain merchandise and the proof showed a contract to furnish, at market prices, all such merchandise as the other party might order.

3. VARIANCE—*how question of, regarded in mechanic's lien proceeding.* The Mechanic's Lien Act is to be "liberally construed as a remedial act," and unless the variance is palpable and material, it will not be deemed fatal.

4. VARIANCE—*what not fatal, in mechanic's lien proceeding.* A fatal variance does not appear where the pleading charged a written contract and the proof showed a contract which was partly oral and partly written.

5. VARIANCE—*when will not defeat allowance of mechanic's lien.* A variance which is slight will not defeat the allowance of a mechanic's lien.

6. CONTRACT—*what deemed written.* A contract is deemed written where a written proposition is made signed by one party, accepted by the other who took the contract and entered upon the work.

7. CONTRACT—*when may be abandoned.* A party to a contract may abandon the performance thereof where the other party is in default.

Mechanic's lien proceeding. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed May 31, 1907.

**Statement by the Court.** This is an appeal by James F. Stepina, individually and as trustee, from a decree of the Superior Court of Cook county in a mechanic's lien suit, brought by The Conklin Lumber Company on August 25, 1905, against one Frank S. Thomazin and Sophia Thomazin, his wife, James F. Stepina individually and as trustee, James J. Donlan, John J. Kratz, F. J. Schlitz, Tyler & Hippach, Wm. T. Gaines, Fred Holmberg, Knickerbocker Ice Company, Rudolph Goss, ——— Goss, ——— Bates and ———Lakin, all of which defendants were said by the bill filed in said cause to claim some interest in certain premises described as lots 287 and 288 in Downing & Phillips' Normal Park addition, in the east half of the northeast quarter of. 29—38—14 east, etc., in Cook county, Illinois. These interests, however, if they existed, were claimed to have accrued subsequent to and to be subject to the lien of the said Conklin Lumber Company. The lien of the said lumber company was represented as arising from a verbal contract made July 25, 1904, between Frank Thomazin and the Conklin Lumber Co., by which the lumber company agreed to furnish Thomazin lumber and materials in such quantity and quality as Thomazin might call for during the construction and erection of two buildings about to be erected on the land above described, of which land Thomazin was then the owner. Three hundred and fifty-nine dollars and three cents was said to be the balance due the Conklin Lumber Company on this contract for the material furnished under it. The Knickerbocker Ice Company filed an answer in the nature of an intervening petition, claiming a lien for $113.10 for brick, lime and cement furnished for the same buildings.

Tyler & Hippach, by a like answer, claimed a lien for $64 for glass and glazing; William Gaines a lien

of $240 for plastering; Kratz & Schlitz one for $143.54 for tinning, and Thomas Donlan one for $130 for plumbing.

James F. Stepina first filed a general demurrer to the bill. This was overruled. He then filed an answer, in which he denied most of the various allegations of the original complainant's bill, and set forth that Frank Thomazin and Sophia Thomazin, being indebted to Stepina in the sum of $1,600, on August 4, 1904, executed notes of that date to evidence the indebtedness and a trust deed to him of the premises described in the bill of complaint to secure said notes, which trust deed was filed for record on August 10, 1904, and was a first lien on said premises prior to any complainant might have; that on the same date the Thomazins were indebted in the further sum of $1,800 to Stepina, and executed notes for that amount and a trust deed of the said premises to secure them, which deed was also recorded on August 10, 1904, and formed a second lien on the said premises, also, however, prior to any lien of the complainant.

The other defendants were either not found or defaulted. After replications were filed by the complainant, the cause was on February 9, 1906, referred to a master.

On the coming in of the master's report of his conclusions, with the testimony and exhibits, objections by Stepina and others, filed before the master and overruled by him, were ordered to stand as exceptions. They were, however, all overruled and the master's report confirmed. A decree was entered in accordance therewith, dismissing the petitions and denying the claims of Tyler & Hippach and the Knickerbocker Ice Company, but establishing the lien on all of the said premises of the Conklin Lumber Company for $359.03, with interest, and $80 for solicitor's fees, and the lien on all said premises of Kratz & Schlitz for $143.49, with interest, and $40 for solicitor's fees, both of said liens to be superior to the liens of Stepina under the trust deeds.

The decree gave also a lien to Donlan upon one of said lots for the sum of $130 and interest, and $40 for solicitor's fees subject to the liens of the Conklin Lumber Company and of Kratz & Schlitz, and subject to the lien of Stepina through the trust deeds as to the lot itself, but superior to it as to the building on said lot.

It gave to Gaines a lien for $240, with interest, and $55 for solicitor's fees, subject to the lien of the Conklin Lumber Company and of Kratz & Schlitz, and subject to the lien of the trust deeds of Stepina as to the lots but superior to said lien as to the buildings.

The decree also found the facts concerning the execution of the notes and trust deeds to Stepina to be as alleged in Stepina's answer and that the loans were what is commonly called building loans, and decreed that Stepina be given a lien on the premises involved, subject to the lien of the Conklin Lumber Company, and of Kratz & Schlitz, and subject to the lien of Gaines upon the building on each of the lots, and subject to the lien of Donlan on the building on lot 287.

From this decree Stepina appealed to this court. Here he has raised the same questions by his assignments as he did before the master and the chancellor by his objections to the master's report.

Although there are twenty-seven assignments of error they are condensed by counsel for complainant in his argument as follows:

A. The court erred in enforcing a lien in favor of the Conklin Lumber Company, because there was a variance (1) between the bill of the company and the statement of claim for lien filed in the Circuit Court Clerk's office in accordance with the statute; (2) between said bill and the proofs; and (3) between the statement of claim and the proofs.

B. The court erred in enforcing a lien in favor of Kratz and Schlitz, because there was a variance (1) between the intervening petition of Kratz & Schlitz and the proofs and (2) between their statement of claim and the proofs.

C. The court erred in enforcing a lien in favor of Donlan because there was a variance (1) between the answer of Donlan and the proofs and (2) between his statement of claim and the proofs; and because Donlan abandoned the performance of his contract without justification.

The appellant has assigned specific errors as to the lien declared in favor of Gaines, but has omitted these assignments in his abstract and abandoned them in his argument. He asks in his brief for no relief against the judgment in favor of Gaines.

MASON & WYMAN, for appellant.

GUSTAVE E. BEERLY, WILFORD C. SHIPNES and WALTER F. HEINEMANN, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

Of course the decree, so far as it is in favor of William T. Gaines, must be affirmed. Solicitors for Gaines ask that it should be affirmed with ten per cent. damages, since it is practically admitted by the course of the appellant that the appeal was taken as against Gaines only for delay. We should be willing to do this if the appellant's interests only were involved, but so to increase the amount of the adjudged lien in favor of Gaines would be to impose on the principal defendant, Frank S. Thomazin, who has not appealed, an additional burden, which we do not think it just to do.

The appellant makes the objection to the decree so far as it declares and enforces a lien in favor of John J. Kratz and F. J. Schlitz, doing business as John J. Kratz & Company, that a different contract was proven from that alleged in their statement of claim, filed under the law in the office of the clerk of the Circuit Court February 3, 1905, and from that alleged in their answer or intervening petition filed in this case December 15, 1905. The variance is said to be that in

the statement of claim and in the answer that contract was alleged to be an entire one to furnish a certain amount of hardware and other material for $168.54, while the one proved was to furnish such hardware and other material as the defendant might order at market prices.

We do not think there is any such variance as is charged; certainly there is no fatal variance.

The statement of claim says that "on or about August 2, 1904, F. S. Thomazin made a verbal contract with the claimants, John J. Kratz and Company, to deliver certain hardware and goods and merchandise as from time to time selected for the building then being erected on said real estate;" also that "the claimants were to complete the delivery within a reasonable time after the goods were ordered;" also that the claimants "furnished hardware goods and materials on said premises of the value of one hundred and sixty-eight 54/100 dollars," according to a schedule inserted.

The answer says the contract was a verbal one "to furnish work, labor and material; hardware, tinning and trimming supplies, and to do the work and labor required in installing said tinning work and other work connected therewith in and about" the buildings in question; that the claimants furnished material and labor under said contract within the time specified, and that "under the terms of said contract they were to receive $168.54," and that the "material and labor were reasonably worth $168.54."

The proof was that Thomazin selected the hardware that he wanted, and got it as he wanted it; that it amounted, including gutters and downspouts put up at an agreed price, to $168.54; that the work and material were accepted and pronounced satisfactory by him.

The mechanic's lien law could hardly be said to be "liberally construed as a remedial act," as in itself it is provided that it shall be, if a fatal variance could be detected here.

So far as the decree declares and provides for the enforcement of a lien in favor of Thomas Donlan, the same objection is made as to the Kratz and Schlitz claim, namely, that there is a variance between the statement of claim and the proofs, and between the answer and the proofs; and in addition the objection is made that Donlan lost any lien he might otherwise have had by abandoning his contract without justification.

The gist of the argument of appellant in favor of the first objection is, that the contract is alleged in the statement and in the answer to be a written one, while the contract proved is an oral one.

Appellant concedes that a contract was made between Thomazin and Donlan, but says that it was not written. The contract was not set out *in haec verba* in the statement of claim for lien, but the terms of it are stated as they appear in the copy set forth in the answer and in the original introduced in evidence. Donlan made a proposition to Thomazin in writing, headed "Contract for Plumbing, Gasfitting and Sewerage at Nos. 7155 & 7159 Peoria St." It contained a date, and the items of plumbing required and to be furnished for two cottages, and concluded: "This labor and material is to cost $410.00—$205.00 for each cottage, of which $75 on each cottage is to be paid plumber when job is roughed in, and $130 on each cottage, more is to be paid him when the plumbing work is finished."

This paper Thomazin signed "F. S. Thomazin" and returned to Donlan, who thereupon proceeded to do work and furnish material under it.

It is said by appellant that this is not a written contract because it does not disclose any party to it but Thomazin, and that it is wholly indefinite in not stating what has to be done. If further evidence in the case makes it a contract, it is said, it is not a written contract, but one partly in writing and partly oral, and therefore, "in legal effect an oral contract." To this proposition are cited authorities to the effect

that to make a contract "written," the parties and the terms and provisions thereof must be ascertainable from the instrument itself.

In the present case the "plumber" is mentioned as the party who is to be paid, and it is plain that the owner of 7155 and 7159 Peoria street is the other party, and that the work and material to be furnished and the amounts and times of payment are set forth. The paper is signed by the "owner," and was retained and presented by a "plumber," who swears he made the proposition, took the contract, and entered upon the work. We think the contract was in legal effect a "written" one sufficiently to bring it within the description of it made in the statement and answer. But even if it did not answer that description, because it was partly oral and partly written, there would be no variance fatal to the right of recovery of a decree in this case.

Under the Mechanic's Lien Act of 1903, no distinction is made between oral and written contracts. The rights to a lien under them are the same. The denomination, therefore, of the contract as a written one was wholly immaterial. If it was a mistake, it injured no one. The document was fully described in both statement and answer, and there was no surprise in its production in the form in which it existed. To defeat a lien on such an objection would certainly not be to construe the act "liberally as a remedial act."

The other objection, that Donlan unjustifiably abandoned the job before completion, depends on the theory that $150 was to be paid to Donlan when the plumbing work was roughed in on both cottages, and $260 when the plumbing work was entirely finished on both cottages. We do not so read the contract. It seems plain to us that it means that $75 was to be paid as soon as the roughing in of the work on one cottage had been done and $130 more when the work had been entirely finished on that cottage. Consequently when the plumbing work in one cottage had been entirely completed the final payment of $130 was

due on that cottage. As it was not paid, Donlan was entitled to abandon his work on the contract and proceed to enforce his lien as provided by section 4 of the Act.

The objection made to the decree, so far as it declares and provides for the enforcement of a lien in favor of the Conklin Lumber Company, is based entirely on an alleged variance between the bill of complaint filed by the company, the statement of lien filed in the Circuit Court clerk's office, and the proofs, each of these essential factors being said to differ from the other two.

The master in his report, in passing on this objection, disposed of it by saying: "While there was some slight variance between the pleadings and the proof, I do not consider it sufficient reason to recommend the disallowance of the lien," and we are inclined to affirm the court's action in confirming this report with much the same brevity in the reasons.

The statement of claim said that "the materials were not furnished in pursuance of any express contract, but upon orders given from time to time by said Thomazin during the progress of the construction," etc. The bill alleged that "a verbal contract was entered into by which lumber was to be furnished in such quantity or quality as Frank S. Thomazin might need, etc., and as he might from time to time call for or order during the erection of said buildings, etc., and that Thomazin agreed to pay the usual market price, or such price as might be agreed on at the time of ordering," etc.

There is no variance worth noticing in these documents. But it is alleged that the proof varied from both statement and bill, in that it showed an express contract for a certain amount of lumber for a specific price, namely, $533.78, and not, as claimed by statement and bill, a contract for lumber in such quantity as might be needed at such price as might be agreed on when ordered.

It is true that Prosser, the manager of the company, testified that when Thomazin came to the office of the company first, he said that he had figures from one of the company's competitors, and that thereupon Prosser agreed with him as to prices, and an estimate, as Prosser later calls it, and as it is denominated in the paper itself, was made out of prices which Thomazin agreed to pay for different items of lumber. The gross amount of this estimate was $533.78, and it bore a memorandum signifying that two and one-half per cent. was to be deducted from that price. The lumber actually from time to time ordered and furnished did not include items of this estimate amounting to $56.70, and did include lumber which was not mentioned in the estimate to the amount of $136.13. On the basis of the lumber actually furnished, and crediting the amount paid, the Conklin Lumber Company under date of March 14, 1905, presented a bill to Thomazin for $359.03, and he placed upon it a certificate that he ordered from the Conklin Lumber. Company lumber and building materials amounting to three hundred and fifty-nine 00/100 dollars, and that they delivered same per his orders, and that it was used in his buildings, etc. There is no evidence to the contrary.

The converse of the contention made by the appellant as to the Donlan claim seems to be made here. It is that the estimate, although unsigned by either party, and not in fact carried out in its entirety, was an express written contract, and that as it was wrongly described as something else in the statement and bill, it cannot be made the basis of the lien decreed. We agree with the master and the court below that there is no variance which should defeat the lien. Giving the statute a reasonable construction, we see no reason in it why the Conklin Company's claim should not be allowed under the condition of the pleadings and proofs.

The decree of the Superior Court is therefore affirmed.

*Affirmed.*